## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAISOON MOHAMMED** ) | |
| **17961 Hanna Street** ) | |
| **Melvindale, MI 48122** ) | |
| ) | |
| **as Next Friend of** ) | |
| **MOHAMMAD MUNAF,** ) | **CIVIL ACTION NO.** |
| **Camp Bucca, Iraq;** ) | |
| ) | |
| **Petitioners,** ) | **PETITION FOR** |
| ) | **WRIT OF HABEAS CORPUS** |
| **v.** ) | |
| ) | |
| **FRANCIS J. HARVEY,** ) | |
| **Secretary of the U.S. Army** ) | |
| **101 Army Pentagon** ) | |
| **Room 3E-506** ) | |
| **Washington, D.C. 20301-0101;** ) | |
| ) | |
| **MAJOR GENERAL** ) | |
| **WILLIAM H. BRANDENBURG,** ) | |
| **Deputy Commanding General** ) | |
| **(Detainee Operations)/Commanding General,** ) | |
| **Task Force 134,** ) | |
| **Multi-National Force-Iraq;** ) | |
| ) | |
| **COLONEL [FNU] STEELE,** ) | |
| **Commanding Officer,** ) | |
| **Camp Cropper, Iraq;** ) | |
| ) | |
| **Respondents.** ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

1.     Petitioner Mohammad Munaf seeks a writ of habeas corpus.  Petitioner is an

American citizen imprisoned by the U.S. military for more than one year at Camp Cropper

Prison at Baghdad International Airport in Iraq.  He has been detained almost *incommunicado*,

without any access to U.S. counsel, without due process, and under threat of transfer to Iraqi

authorities.  He continues to be severely restricted in his contacts with his family and the outside world.

2.      On information and belief, Mr. Munaf traveled to Iraq at the behest of and with three journalists from Romania in March 2005 as a translator and guide.  Soon after their arrival, unknown persons kidnapped Mr. Munaf and the three Romanian journalists, and held them captive for fifty-five days.

3.      Upon his release from captivity, Mr. Munaf was imprisoned by the U.S. military at a prison compound located at the Baghdad International Airport ("BIAP").  Mr. Munaf has remained in U.S. custody at Camp Cropper Prison at BIAP since approximately June 2005.  Mr. Munaf's detainee number is 200175.

4.      For the first five months of his detention, Mr. Munaf was not allowed contact with his family or a lawyer.  Since approximately November 2005, he has been offered very limited contact with his family.  He has had limited access to an Iraqi attorney.  Despite his requests, he has been denied access to an American attorney.

5.      The U.S. Constitution, the laws of the U.S., and the binding obligations of international law prohibit the U.S. government from arresting its citizens and detaining them without charge or lawful process, all without permitting them access to counsel.  Mr. Munaf's prolonged detention, which has by now lasted more than one year, violates constitutional, statutory, and international laws, including:

    a.      The fundamental right to due process of law guaranteed by the Fifth Amendment to the U.S. Constitution;

    b.      The fundamental right to be free from governmental restraint absent a criminal proceeding or judicial process under the Suspension Clause of the U.S. Constitution;

c.    The fundamental right to assistance of counsel guaranteed by the Fifth Amendment to the U.S. Constitution;

d.    The right to be free from arbitrary and indefinite executive detention pursuant to the Citizen Non-Detention Act, 18 U.S.C. § 4001(a);

e.    The right as a noncombatant to be free from arbitrary and indefinite detention as guaranteed by the International Covenant on Civil and Political Rights and understood by customary international law, including the customary international law of armed conflict; and

f.    The right to be free from an unlawful transfer to a foreign sovereign to be tortured and denied due process, as guaranteed by the Fifth Amendment to the U.S. Constitution, the habeas statute, and Common Article 3 of the Geneva Conventions.

6.    Accordingly, Petitioners respectfully seek relief from this Court, *inter alia,* in the form of a writ of habeas corpus.  Petitioners specifically request that this Court issue such a writ compelling Respondents to (1) permit Mr. Munaf immediate access to his attorneys of choice who are listed below, and not solely Iraqi counsel; (2) establish a lawful basis for Mr. Munaf's detention or release him from custody; and (3) enjoin Mr. Munaf's transfer to Iraqi authorities.

### JURISDICTION AND VENUE

7.    Petitioners invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 2241(a), (c)(1) & (c)(3); 2242, and 2243.   In addition, this Court has jurisdiction under the U.S. Constitution, Article I, § 9, cl. 2, Article III, and the Due Process Clause of the Fifth Amendment because those provisions guarantee Mr. Munaf a judicial forum in which to contest the legal validity of his detention.  Mr. Munaf further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1651 (All Writs Act), 2201 & 2202 (Declaratory Judgment Act).

8.     Mr. Munaf is entitled to challenge his detention in federal court.  A U.S. citizen detained in the custody of federal officials in violation of the Constitution, laws, or treaties of the U.S. unquestionably has the right to challenge that detention in federal court once personal jurisdiction over the petitioner's custodian is established.

9.     Mr. Munaf is detained by U.S. officials at a detention facility known as Camp Cropper.  The facility is under the control of the U.S. military and within the plenary and exclusive jurisdiction or dominion exercised in fact of the U.S..

10.     This Court possesses personal jurisdiction over Respondents because they are officers or agents of the U.S., carry out their responsibilities in the District of Columbia, have substantial contacts in that District, and one or more of the Respondents are physically located within the territorial jurisdiction of the Court.

11.     Venue is proper in the District of Columbia for this writ of habeas corpus because one or more of the Respondents resides within the jurisdiction of this Court and is amenable to service of process in the District.  28 U.S.C. §§ 1391(a), (b) & (e).

## PARTIES

12.     Petitioner Mohammad Munaf is a U.S. citizen.  His passport number is 112264008; it was issued February 2, 2000.  *See* Ex. 1 (Mohammed Decl.) ¶ 7.  He is currently incarcerated at Camp Cropper, and has been assigned detainee number 200175.  *Id.* ¶ 16.  Mr. Munaf has repeatedly requested that his captors provide him with U.S. counsel, but to date these requests have been denied.

13.     Petitioner Maisoon Mohammed is Mr. Munaf's sister.  Her declaration is attached as Exhibit 1.  Ms. Mohammed is a U.S. citizen who resides in Michigan.  Ex. 1 (Mohammed Decl.) ¶ 3.  Ms. Mohammed has communicated with U.S. officials about her brother's

imprisonment and is deeply concerned about Mr. Munaf's health and well being.  *Id.* ¶¶ 14-15, 21.  Because Mr. Munaf has been denied access to U.S. counsel and courts, Ms. Mohammed acts as his next friend.  *Id.* ¶ 1.

14.    Respondent Francis J. Harvey is Secretary of the U.S. Army.  In that capacity, Respondent Harvey is the senior official of the Department of the Army.  Respondent Harvey has authority over the custody and control of U.S. Armed Forces detainee operations in Iraq, including those held at Camp Cropper.  As such, he is the custodian ultimately responsible for Mr. Munaf's detention.  He is sued in his official capacity.

15.    Respondent Major General William H. Brandenburg is Deputy Commanding General of Detainee Operations and Commanding General of Task Force 134, Multi-National Force-Iraq.  Respondent Brandenburg has responsibility for detainee operations for the U.S. Armed Forces in Iraq.  Respondent Brandenburg is charged with maintaining custody and control over all of the approximately 11,000 prisoners of the U.S. Army in Iraq, including those detained at Camp Cropper.  He is sued in his official capacity.

16.    Respondent Commander Colonel Steele is with the U.S. Army and is the commanding officer at Camp Cropper.  His first name is unknown.  Respondent Steele is Mr. Munaf's immediate custodian at Camp Cropper and has authority to release Mr. Munaf from U.S. custody.

**STATEMENT OF FACTS**

17.    Mr. Munaf is a 53-year-old American-Iraqi citizen.  Ex. 1 (Mohammed Decl.) ¶¶ 2, 4, 7.  He was born in Baghdad, Iraq and emigrated to the U.S. in 1990.  *Id.* ¶¶ 2, 6.  He became a U.S. citizen in 2000.  *Id.* ¶ 7.

18.     In 1980, Mr. Munaf moved to Romania to start university studies.  *Id.* ¶ 5.  In 1989, Mr. Munaf married Georgette Victoria, a Romanian woman who later became an American citizen.  *Id.* ¶ 6.  They moved together to the U.S. in 1990 and lived in New York.  *Id.* Between 1996 and 2001, Mr. Munaf and his family maintained residences in both Romania and the U.S.  *Id.* ¶ 9.  Since 2001, the family's residence has been solely in Romania.  *Id.*  Mr. Munaf and his wife have three children, all of whom are U.S. citizens who currently reside in Bucharest, Romania.  *Id.* ¶ 8.

19.     In March 2005, three Romanian journalists, Ovidiu Ohanesian, Marie Jeanne Ion, and Sorin Miscoci, invited Mr. Munaf to travel to Iraq with them as a guide and translator.  The three Romanian journalists hired Mr. Munaf because of his ability to speak and read the Iraqi dialect of Arabic.  They arrived in Baghdad on or around March 15, 2005.  Mr. Munaf and the journalists subsequently traveled to an area southwest of Baghdad, Iraq.  On or about March 28, 2005, unknown armed forces kidnapped them.  *See* Ex. 1 (Mohammed Decl.) ¶ 11.

20.     An Iraqi group identifying itself as the "Muadh Ibn Jabal Brigade" publicly claimed responsibility for the kidnapping.  *Id.* ¶ 12.  The group demanded that Romania withdraw its troops from Iraq and sought millions of dollars in ransom.  *Id.*  On or about May 22, 2005, after approximately fifty-five days of captivity, Mr. Munaf and the Romanian journalists were released.  *Id.* ¶ 13, 14.

21.     Upon their release, the journalists and Mr. Munaf were taken to the Romanian Embassy in Iraq.  *Id.* ¶ 13.  Mr. Munaf was transferred to U.S. custody that same day, immediately after the embassy visit.  *Id.* ¶¶ 13-14.  Mr. Munaf has remained in U.S. custody since that date.

22.     Mr. Munaf is innocent.  He has committed no crime or violent act against the U.S. or its allies, nor has he supported forces hostile to American interests.  He has never been a member of or associated with al Qaeda or any other terrorist organization.  He has never been a member of or associated with any insurgent group or militia.  He is an innocent American citizen held unlawfully by his government in an Iraqi prison for more than a year.  The U.S. has told Petitioner Maisoon Mohammed that it does not have any evidence that Mr. Munaf violated any laws.  *Id.* ¶ 15.

23.     Petitioners have a real and immediate fear that the U.S. intends to transfer Mr. Munaf to Iraqi custody.

24.     The transfer of Mr. Munaf to Iraqi custody would place him at grave risk of torture or death.  There is evidence of systemic and widespread torture of prisoners in Iraqi custody, particularly Sunni Muslims such as Mr. Munaf.  Furthermore, there is evidence that the Iraqi judicial system lacks even minimum standards of due process.

25.     Upon information and belief, Mr. Munaf has been permitted to meet briefly with an Iraqi attorney, hired and paid for by his family in Iraq.  *Id.* ¶ 18.  Mr. Munaf's conversations with his Iraqi attorney are believed to be monitored by the U.S. military and are limited in duration.  *Id.*

26.     Mr. Munaf's family in Baghdad has been permitted to visit Mr. Munaf for thirty minutes approximately once per month for the last several months of his imprisonment.  During a recent visit, on or about June 24, 2006, Mr. Munaf gave his family the name and phone number of Burke Pyle LLC, and asked his family to contact the firm on his behalf.  *Id.* ¶ 20.  Upon information and belief, Mr. Munaf has asked the U.S. military for permission to call the undersigned counsel, but his captors have denied this request.  *Id.* ¶ 19.

27.     Mr. Munaf is permitted to contact his wife and children in Romania by phone approximately once a month.  *Id.* ¶ 21.  These phone calls are monitored and limited in duration to approximately two to three minutes.  *Id.*

28.     In his conversations with his family, Mr. Munaf has maintained that he is innocent.  *Id.* ¶ 22.

29.     On or about April 9, 2006, U.S. military forces raided Mr. Munaf's parents' home in Baghdad, confiscating nearly $10,000 (USD) in cash, as well as jewelry, cameras, and other valuable items. In the course of the raid, significant damage was done to the house through the use of explosives.  U.S. forces held a family member at gunpoint and forced her to open a safe which contained important family documents, including passports, all of which were seized. U.S. forces hooded Mr. Munaf's father, an 84-year-old man with dementia, and two of Mr. Munaf's nephews, ages 15 and 21.   The U.S. forces arrested and imprisoned Mr. Munaf's nephews for several days without charge.   When they were eventually released, the nephews were told by the U.S. military that their arrests had been a "mistake."   Mr. Munaf's family suffered severe physical and psychological damage and continues to feel the effects of this attack.  Upon information and belief, this attack was related to Mr. Munaf's unlawful arrest and imprisonment.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### UNLAWFUL DETENTION UNDER THE
### FIFTH AMENDMEN TO THE U.S. CONSTITUTION

30.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

31.     Respondents' arbitrary and indefinite detention of Mr. Munaf without due process violates the "most elemental of liberty interests – the interest in being free from physical detention by one's own government" without due process of law.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (plurality op.).  The laws and Constitution of the U.S. protect Mr. Munaf, a U.S. citizen, at least as much as they protected Mr. Hamdi.

32.     Respondents' detention of Mr. Munaf is arbitrary because the U.S. has neither charged Mr. Munaf with a crime nor provided a lawful basis for his continued detention. Detention of an American citizen without trial or any other lawful process, and the denial of access to counsel, violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

### SECOND CLAIM FOR RELIEF
### UNLAWFUL DETENTION UNDER THE SUSPENSION CLAUSE

33.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

34.     Respondents' detention of Mr. Munaf violates the Habeas Corpus Suspension Clause of the U.S. Constitution.  Article I, § 9, cl. 2.  The Suspension Clause guarantees Mr. Munaf the right to be charged with a criminal offense or released.  .

35.     The Suspension Clause guarantees Mr. Munaf the right to meaningful judicial process to ascertain the legal and factual bases of his detention. Mr. Munaf has not been given a meaningful opportunity to review or respond to the allegations against him and thus continues to be denied the judicial process that is required absent suspension of the writ of habeas corpus.

### THIRD CLAIM FOR RELIEF
### UNLAWFUL DETENTION CONTRARY TO THE
### CITIZEN NON-DETENTION ACT

36.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

37.     Respondents' continued detention of Mr. Munaf violates the Citizen Non-Detention Act, 18 U.S.C. § 4001(a). The Act commands that: "No citizen shall be imprisoned or otherwise detained by the U.S. except as pursuant to an Act of Congress." No Act of Congress authorizes the continued detention of Mr. Munaf, and therefore his detention violates the Citizen Non-Detention Act.

### FOURTH CLAIM FOR RELIEF
### UNLAWFUL DETENTION CONTRARY TO ARMY REGULATIONS

38.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

39.     Respondents' arrest and detention of Mr. Munaf violates Army Regulation 190-8, which prohibits the prolonged and unlawful detention of civilians. *See, e.g.*, Army Regulation 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty shall be imposed.").

40.     By Respondents' own admission, Mr. Munaf is a civilian held without charge who presents no security threat to the U.S., and who has been denied access to a competent

tribunal. Ex. 1 (Mohammed Decl.) ¶ 17. His detention therefore violates Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.

## FIFTH CLAIM FOR RELIEF
### PROLONGED ARBITRARY DETENTION IN VIOLATION OF INTERNATIONAL LAW

41.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

42.     Respondents continue to breach their obligations under customary international law, accepted by, and binding on, the U.S., by seizing and continuing to hold Mr. Munaf, a U.S. citizen, without justification, charge, or judicial proceeding. International law, as defined by the International Covenant on Civil and Political Rights and according to the customary international law of armed conflict and international human rights, prohibits prolonged arbitrary detention of noncombatants such as Mr. Munaf.

## SIXTH CLAIM FOR RELIEF
### DENIAL OF ACCESS TO COUNSEL UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

43.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

44.     Respondents have denied Mr. Munaf access to American counsel and ignored his repeated requests for access to U.S. counsel and courts. This conduct violates the Fifth Amendment to the U.S. Constitution, which prohibits the government from denying American citizens in its custody access to counsel when they request it.

## SEVENTH CLAIM FOR RELIEF
### THREAT OF UNLAWFUL TRANSFER TO FOREIGN SOVEREIGN

45.     Petitioners re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

46.    Respondents threaten to transfer Mr. Munaf to Iraqi custody at any time without advance notice to counsel or to the Court, without legal authority, and without an opportunity for Mr. Munaf to challenge the basis for his prolonged detention, notwithstanding the substantial risk that he would be tortured and denied due process if handed over to the Iraqis.

47.    The transfer or threatened transfer of a U.S. citizen to a foreign sovereign without judicial review, without lawful authority, and without an opportunity to challenge the basis for his detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution; the federal habeas corpus statute, 28 U.S.C. § 2241; the Habeas Corpus Suspension Clause, Art I, § 9, cl. 2; Common Article 3 of the Geneva Conventions; and customary international law.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners pray for relief as follows:

(A)    Order Respondents to ensure that Mr. Munaf receives a copy of this petition, and any Order this court may issue;

(B)    Order Respondents to allow undersigned counsel to meet with Mr. Munaf, in private and unmonitored attorney-client conversations, by phone, by video conference, and in person;

(C)    Order Respondents to cease all interrogations of Mr. Munaf, whether direct or indirect, in the absence of undersigned counsel;

(D)    Issue a Writ of Habeas Corpus requiring Respondents to release Mr. Munaf from detention, and requiring Respondents to bring Mr. Munaf before a court of competent jurisdiction in the U.S. to show just case for his continued detention;

(E)    Convene an evidentiary hearing and order Respondents to produce Mr. Munaf in person for the hearing;

(F)     Issue an injunction prohibiting the U.S. from transferring Mr. Munaf to the legal

or physical custody of another sovereign; and

(G)     Order such other relief as the Court may deem necessary and appropriate to

protect Mr. Munaf's rights.

Dated: August 15, 2006                          Respectfully submitted,


_____

Susan L. Burke (D.C. Bar # 414939)
BURKE PYLE LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:     (215) 487-6596
Facsimile:      (215) 482-0874


Joseph Margulies
MACARTHUR JUSTICE CENTER,
NORTHWESTERN UNIVERSITY
SCHOOL OF LAW
357 East Chicago Avenue
Chicago, IL 60201
Telephone:     (312) 503-0890


Jonathan Hafetz
Aziz Z. Huq
BRENNAN CENTER FOR JUSTICE AT
NEW YORK UNIVERSITY LAW SCHOOL
161 Avenue of the Americas
12th Floor
New York, NY 10013
Telephone:     (212) 998-6730
Facsimile:      (212) 995-4550


*Counsel for Petitioners*

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MAISOON MOHAMMED**<br>**17961 Hanna Street**<br>**Melvindale, MI 48122;**<br><br>**as Next Friend of**<br>**MOHAMMAD MUNAF**<br>**Camp Bucca, Iraq**;<br><br>           **Petitioners,**<br><br>**v.**<br><br>**FRANCIS J. HARVEY**<br>**Secretary of the United States Army**<br>**101 Army Pentagon**<br>**Room 3E-506**<br>**Washington, DC 20301-0101;**<br><br>**MAJOR GENERAL WILLIAM H.**<br>**BRANDENBURG**<br>**Deputy Commanding General (Detainee**<br>**Operations)/Commanding General, Task**<br>**Force 134, Multi-National Force-Iraq;**<br><br>**COLONEL STEELE**<br>**Commanding Officer,**<br>**Camp Cropper, Iraq;**<br><br>           **Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **CIVIL ACTION NO. _____**<br><br>     **PETITION FOR WRIT OF**<br>     **HABEAS CORPUS** |

**DECLARATION OF MAISOON MOHAMMED**

I, Maisoon Mohammed, declare under penalty of perjury that the following

statements are true and correct, to the best of my knowledge, information, and belief:

1.      I am the sister of Mohammad Munaf.  I am filing a habeas petition on my brother's behalf because I know this is what he wants me to do and because he is unable to act because he is without access to the Court.

2.      I was born on December 5, 1965.  I have seven siblings, including Mohammad.  We were all born in Baghdad, Iraq.  My parents and several other family members still live in Baghdad.

3.      I came to the U.S. in January 2000 and have lived in Michigan since that time.  I became a U.S. citizen in 2003.

4.      Mohammad was born on November 29, 1952.

5.      Mohammad went to Romania in December 1980 to study for his Bachelor's degree.  He lived there for approximately ten years.

6.      Mohammad married a Romanian woman, Georgette Victoria, in 1989.  They came to the U.S. in approximately 1990 and lived in New York.

7.      Mohammad became a U.S. citizen in approximately 2000.  His passport number is 112264008, issued February 2, 2000.

8.      Mohammad and Georgette have three children, all of whom are U.S. citizens:  Dunia, born January 9, 1991 in New York, Amin, born January 9, 2000, and Jasmine, born March 17, 2003.  I believe the two younger children were born overseas; however, they subsequently visited the U.S. and became U.S. citizens.

9.      My brother is a businessman.  Between 1996 and 2001, my brother and his family had residences in both New York and Romania.  My brother was last in the U.S. in approximately 2001.  After that time, he lived only in Romania.  Mohammad's wife and children currently live in Bucharest, Romania.

10.    My brother left Romania for Iraq in March 2005 with three Romanian journalists who hired him as a translator and guide.

11.    My brother and the journalists were kidnapped in Iraq on or about March 28, 2005.  I learned that my brother was kidnapped on March 29, 2005 when I saw the story on the news.  My family in Baghdad later confirmed this.

12.    The group Muadh Ibn Jabal Brigade claimed responsibility for the kidnapping.  The kidnappers demanded Romania withdraw its troops from Iraq and also sought ransom money.

13.    Approximately two months after my brother was kidnapped, I saw on the news that he and the other victims were released to the Romanian embassy and that my brother had requested to go to the U.S. Embassy.  I waited anxiously for his safe return, but he was never released.

14.    I began speaking to Jennifer Foo at the U.S. State Department soon after Mohammad was kidnapped.  After Mohammad and the journalists were released, on or about May 22, 2005, Ms. Foo confirmed that Mohammad was in U.S. custody.

15.    In approximately June 2006, Ms. Foo told me by telephone that the U.S. had closed the kidnapping case and had no charges against my brother.

16.    Mohammad is being held in custody of the U.S. military in the prison located at the Baghdad International Airport, and has been in U.S. custody since on or around May 22, 2005.   His detainee number is 200175.

17.    I have been told that there are no charges against my brother in Iraq and that he is not classified as a security threat.  At one point, I was told that my brother was being held as a witness for the case in Iraq against his kidnappers.

18.    I understand that my brother has been allowed to have an Iraqi lawyer, hired and paid for by my family.  Mohammad is only rarely able to see his Iraqi lawyer, in brief, monitored conversations.

19.    I understand that Mohammad has asked for an American lawyer and has been denied access, including a phone call, to the U.S. to contact a U.S. lawyer.

20.    The last time my family in Baghdad visited Mohammad at the airport prison, on or about June 24, 2006, Mohammad gave my mother the name and phone number of a lawyer and asked her to contact the lawyer on his behalf.  Mohammad said he got the phone number from someone in the U.S. military.  The lawyer was Heather Allred, one of the lawyers filing this petition.

21.    I am deeply concerned about my brother's health and well being from being held hostage for two months and imprisoned for over one year.  Mohammad has kidney problems and was seeing a doctor for this before he was kidnapped.  He misses his wife and children very much.  He is only allowed one phone call to them per month, and the calls are limited to approximately 2-3 minutes each.

22.    Mohammad adamantly maintains that he is innocent.

Dated:  August _8_ , 2006

Maisoon Mohammed

4