IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAISOON MOHAMMED, *et. al.*,<br>Petitioners,<br><br>v.<br><br>FRANCIS J. HARVEY, *et. al.*,<br>Respondents. | C/A NO. 1:06-CV-01455 (RCL) |

## *EMERGENCY SUPPLEMENT TO PETITIONER MOHAMMAD MUNAF'S MOTION FOR AN ORDER ENJOINING HIS TRANSFER TO IRAQI AUTHORITIES*

On the basis of new information that Petitioner Mohammad Munaf ("Mr. Munaf") will be executed if transferred to Iraqi custody, undersigned counsel hereby supplement Petitioners' September 8, 2006 motion for a temporary restraining order enjoining such transfer pending resolution of his habeas petition or, at a minimum, until after the U.S. Court of Appeals for the District of Columbia Circuit issues its opinion in *Omar v. Harvey.*

On October 12, 2006, Mr. Munaf was convicted and sentenced to death by an Iraqi court operating under glaring procedural deficiencies and the direct manipulation of U.S. military personnel. *See* Supplemental Declaration of Sean Riordan ("Riordan Supp. Decl.") ¶¶ 5-14, attached hereto as Exhibit A. As Petitioner has argued, it is this Court's unflagging obligation to ensure that an American citizen's detention by his own government and transfer to a foreign power comports with fundamental constitutional guarantees. *See, e.g.*, Memorandum of Law in Support of Petitioners' Motion for a Temporary Restraining Order at 10-11, 14-15; Reply Memorandum in Support of Petitioners' Motion for a Temporary Restraining Order at 8-12. Because Mr. Munaf's transfer would grossly and irreparably violate his right to life, this Court should, at a minimum, issue an order preserving the *status quo* and preventing Mr. Munaf's

transfer until after the District of Columbia Circuit decides *Omar v. Harvey* and this Court can fully and fairly adjudicate Mr. Munaf's claims for relief.

A litany of procedural deficiencies and manipulation by U.S. military officials resulted in Mr. Munaf's death sentence. When Mr. Munaf, his co-defendants, their lawyers, and the Iraqi judge arrived at court for the October 12, 2006 proceeding ("the proceeding"), all believed that the charges would be dropped because of Romania's failure to come forward with a criminal complaint. Riordan Supp. Decl. ¶ 6. Indeed, Mr. Munaf's Iraqi counsel was specifically told by the Iraqi judge that he would be acquitted of all charges. *Id.* At the proceeding, however, an American soldier who claimed to be acting on behalf of the Romanian embassy appeared and demanded that the accused be put to death. *Id.* ¶ 7. An American general also in attendance insisted in open court that the accused were guilty and should be executed. *Id.* The judge initially disagreed. The judge then ejected the defendants and their counsel from the court and conferred privately with the military officials for approximately 15 minutes. *Id.* ¶ 12. When the defendants and their counsel were again admitted to court, the judge pronounced Mr. Munaf and the other defendants guilty and sentenced them to death. *Id.* ¶ 13.

Despite evidence that the other defendants had been brutally beaten to extract confessions, the judge provided no justification for his decision. The judge also failed to acknowledge Mr. Munaf's statement that he is innocent and that any incriminating statements he made were the direct result of the threats of violence and sexual assault against him and his family by American and Romanian officials. *Id.* ¶¶ 9-10; *see also* Declaration of Sean Riordan, attached as Exhibit A to Petitioners' Reply Memorandum in Support of Petitioners' Motion for a Temporary Restraining Order, at ¶¶ 6-10. No witness or evidence was presented against Mr. Munaf or the other defendants. Riordan Supp. Decl. ¶14. No opportunity was given to Mr.

Munaf or to the other defendants to present witnesses or evidence on their behalf. *Id.* ¶ 6. The entire proceeding lasted an hour and a half. *Id.* ¶14.

The proceeding's gross procedural deficiencies and manipulation by U.S. military officials highlight the vital importance of this Court's habeas corpus review. As the Supreme Court made clear in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), even "a state of war is not a blank check for the President when it comes to the rights of the Nation's citizens." *Id.* at 536. Eight of the nine Supreme Court justices in *Hamdi* affirmed in unambiguous terms that the Judiciary *necessarily* plays a meaningful role in safeguarding the fundamental liberties of American citizens against the lawless exercise of executive power. Here, the Constitution plainly forbids the Executive from imprisoning a U.S. citizen without charge for more than fifteen months, subjecting him to torture, and then rendering him to a foreign state for execution based on a sham trial, all without habeas corpus review.

Respondents (Opp. at 1) call Mr. Munaf's request for relief "remarkable." Nothing could be further from the truth. All Mr. Munaf seeks here is a narrow order preserving the *status quo* to ensure that his detention and transfer to a foreign sovereign by his own government – a transfer that will result in his death – complies with the Constitution and laws of this country. Instead, what is "remarkable" is respondents' attempt to deny an American citizen fundamental due process and to circumvent this Court's historic habeas jurisdiction in the face of an unbroken line of Supreme Court and D.C. Circuit precedent affirming that American citizens are protected by the Constitution whenever and wherever they are detained by their own government and that federal courts have both the power and obligation to ensure that their detention and transfer to foreign custody are lawful. This Court's failure to temporarily halt Mr. Munaf's transfer to Iraqi custody will not only send Mr. Munaf to his death without due process; it will eviscerate the

Great Writ's core protections against arbitrary and lawless executive action. Such an outcome would be repugnant to the Constitution and the rule of law.

The death sentence imposed so lawlessly and capriciously on Mr. Munaf reinforces the urgent need for this Court to grant an order preserving the *status quo*. Mr. Munaf had already demonstrated a likelihood of success on the merits based on his prolonged detention without due process and transfer to likely torture without the protection of this Court's habeas review. His chances of success on the merits are even greater now, when he faces a lawless transfer to Iraqi custody to face death, the most irreparable of all harms. Further, the equities now weigh even more strongly in Mr. Munaf's favor, where the U.S. government seeks to flout the Suspension Clause and habeas corpus statute by rendering him for execution without due process or judicial review.

For the foregoing reasons, this Court should order that Mr. Munaf not be transferred to Iraqi custody pending resolution of this habeas proceeding or, at a minimum, until after the Court of Appeals issues its decision in *Omar v. Harvey* so that the merits of Mr. Munaf's claims for relief can be fully and fairly adjudicated.

Dated: October 13, 2006

Respectfully submitted,

/s/ Jonathan Hafetz
Jonathan Hafetz (admitted *pro hac vice*)
Aziz Z. Huq
BRENNAN CENTER FOR JUSTICE AT
NEW YORK UNIVERSITY LAW SCHOOL
161 Avenue of the Americas, 12th Fl.
New York, NY 10013
Telephone:    (212) 998-6730
Facsimile:    (212) 995-4550

Joseph Margulies
MACARTHUR JUSTICE CENTER,
NORTHWESTERN UNIVERSITY
SCHOOL OF LAW
357 East Chicago Avenue
Chicago, IL 60201
Telephone:    (312) 503-0890

Susan L. Burke (D.C. Bar # 414939)
BURKE PYLE LLC
4112 Station Street
Philadelphia, PA 19127
Telephone:    (215) 487-6596
Facsimile:    (215) 482-0874

*Counsel for Petitioners*