IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MAISOON MOHAMMED, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 06-1455 (RCL) |
| FRANCIS J. HARVEY, *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

**RESPONSE TO PETITIONERS' EMERGENCY SUPPLEMENT TO
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Respondents hereby respond to petitioners' Emergency Supplement to Petitioner Mohammad Munaf's Motion for an Order Enjoining His Transfer to Iraqi Authorities (dkt. no. 12) (Oct. 13, 2006) ("Emergency Supp."). Despite petitioners' protestations to the contrary, the fact that Mohammad Munaf ("Munaf") has now been tried, convicted, and sentenced by a Trial Panel of the Central Criminal Court of Iraq ("CCCI") further supports respondents' position that a temporary restraining order should not be entered.

On October 12, 2006, Munaf appeared before a three-judge Trial Panel of the CCCI and was found guilty of kidnapping and was then sentenced to death. Declaration of Robert M. Pirone ("Pirone Decl.") ¶ 3 (attached as Exhibit 1). Contrary to petitioners' hearsay allegations, however, Munaf's conviction was not the result of "glaring procedural deficiencies" or the "direct manipulation of U.S. military personnel." Emergency Supp. at 1. Rather, Munaf appeared before the Trial Panel with the assistance of his Iraqi defense counsel and was afforded the opportunity to submit any evidence or call any witnesses in his defense. Pirone Decl. ¶ 3. Munaf, as well as his five co-defendants, were also allowed to make statements to the Trial

Panel.  Munaf and four of his co-defendants recanted their previous confessions made at the Investigative Hearings, alleging that the Iraqis and/or the Romanians had forced them to confess.  Id. ¶ 6.  None of the defendants, including Munaf, however, alleged that MNF-I had forced them to confess.  Id.

In accordance with his responsibilities for cases involving MNF-I Coalition Forces and for bringing complaints on behalf of MNF-I members, Lieutenant Robert Pirone, an attorney with MNF-I who serves in the CCCI Liaison Office, appeared at the trial, was sworn-in, and made a complaint on behalf of the Romanian Government regarding the kidnapping of the three Romanian citizens for which the defendants were facing trial.  Id. ¶ 7.  Lieutenant Pirone had previously been authorized by a member of the Romanian Embassy to make the complaint for the Romanian Government, a member of MNF-I, and the authorization was made in a signed and stamped letter that had been submitted to the Court weeks before the trial.  Id.  Contrary to petitioners' assertions, at no time did Lieutenant Pirone ask that the defendants receive the death penalty or any other penalty.  Id.  Additionally, at no time did an American General or any other officer of the United States or any officer of an MNF-I member nation appear at the trial or make any statement that the accused were guilty and should be executed.  Id. ¶ 8.

In addition to the statements from Lieutenant Pirone and the defendants' own statements, the three judges of the Trial Panel also heard arguments from the Iraqi Prosecutor and from multiple defense attorneys.  Id. ¶ 9.  The Iraqi Prosecutor asserted that there was enough evidence presented at the Investigative Hearings, including the defendants' sworn confessions, and at the trial to find the defendants guilty of kidnapping under Article 421 of the Iraqi Penal Code.  Id.

Following the presentation of evidence and the arguments of counsel, the three Trial Panel judges asked all persons to leave the courtroom so they could deliberate. Id. ¶ 10. At that time, Lieutenant Pirone and all other MNF-I personnel left the courtroom. Id. Contrary to petitioners' allegations, at no time did any of the Trial Panel judges confer privately with any military officials. See id. Throughout the deliberations, Lieutenant Pirone was in the court lobby, and at no time during the trial was he present with the Trial Panel judges when defense counsel were not also present. Id. Following their deliberations, the Trial Panel judges called the parties back into the courtroom and announced that they had found the defendants guilty of kidnapping and sentenced them to death. See id. ¶ 3.

Munaf's trial previously had been subject to numerous delays based on multiple objections from his Iraqi defense counsel. Id. ¶ 11. After several delays, Lieutenant Pirone and Munaf's defense counsel appeared before one of the Trial Panel judges to determine if Munaf's defense counsel was ready to proceed. Id. Munaf's Iraqi counsel stated he was ready to proceed and both he and Munaf signed a notification that the trial would go forward. Id. At no time was Lieutenant Pirone aware of any statements by any of the three Trial Panel judges in Munaf's case that his case would be withdrawn, that the charges would be dropped, or that Munaf would be acquitted. Id.

Despite petitioners' attempt to portray Munaf's trial as an unfair ambush, in reality, Munaf and his Iraqi counsel had ample notice of the trial, and the Trial Panel proceedings were conducted in an orderly manner and followed established procedures of the CCCI. Id. ¶ 12. Accordingly, Munaf's conviction and sentence were the result of the legitimate and established rules of Iraq's criminal justice system. Furthermore, under Iraqi law, because Munaf was

sentenced to death, his case will automatically be appealed to the Iraqi Court of Cassation, and he will have thirty days to submit materials to the Court for his appeal.  Id. ¶ 13.

As explained previously in Respondents' Opposition to Petitioners' Motion for a Temporary Restraining Order (dkt. no. 9) (Sept. 16, 2006) ("Respondents' Opp."), enjoining Munaf's transfer to Iraqi authorities until after the U.S. Court of Appeals for the District of Columbia Circuit issues its opinion in Omar v. Harvey, No. 06-5126, is unwarranted.  See Respondents' Opp. at 27-29.  Unlike Omar, who had not been presented to a CCCI Investigative Hearing and whose criminal prosecution before the CCCI thus had not yet even started at the time the district court entered the injunction in that case, Munaf's criminal prosecution before the CCCI began before his habeas petition was brought and, more importantly, has proceeded to trial, conviction, and sentencing.  Munaf, represented by counsel, previously made multiple appearances at CCCI Investigative Hearings and an Iraqi Investigative Judge determined that there was sufficient evidence to refer his case for trial.  See Gardner Decl. ¶¶ 15-16 (attached as Exhibit 1 to Respondents' Opp.).  His trial, at which he was represented by counsel, occurred on October 12, 2006, and Munaf now has been convicted and sentenced by a foreign court.  See Pirone Decl. ¶ 3.  As a result, Munaf's case is significantly distinguishable from Omar's case, and the bases for any decision on appeal in Omar are not likely to resolve the issues this Court now faces regarding Munaf's habeas petition.

The fact that Munaf has now been tried, convicted, and sentenced by a foreign court under foreign authority bolsters the fact that this Court lacks jurisdiction to order the requested

relief.[1]  As explained in Section II.A. of Respondents' Opposition, under the principles of <u>Hirota v. General of the Army MacArthur</u>, 338 U.S. 197 (1948) (per curiam); <u>Flick v. Johnson</u>, 174 F.2d 983 (D.C. Cir. 1949); and <u>Keefe v. Dulles</u>, 222 F.2d 390 (D.C. Cir. 1954), as well as the other cases cited therein, United States courts lack habeas jurisdiction over detentions undertaken pursuant to international or foreign authority.  The relief petitioners seek would now result in an even greater interference in the sovereign government of Iraq's criminal justice system and would further intrude on the Executive's authority to maintain foreign relations with Iraq in the manner it deems appropriate and to determine how the United States will cooperate with the United Nations and Iraq through its role in MNF-I, thus violating fundamental principles of separation of powers.  <u>See</u> Respondents' Opp. at 18-27.  These fundamental jurisdictional obstacles and separation of powers concerns counsel against entry of a TRO.

      Accordingly, for the reasons stated above and in Respondents' Opposition, respondents continue to oppose petitioners' motion for a temporary restraining order and request that it be denied in all respects.

---

[1] Concern over the fairness of Iraq's criminal justice system as regards Munaf's case before the CCCI, moreover, is not a valid basis for this Court to enter a TRO.  As explained more fully in Respondents' Opposition, the same principles that have lead courts to adopt a Rule of Non-Inquiry in the extradition context, counsel the Judiciary to refrain from judging the fairness of a foreign government's penal systems and from interfering with the Executive's determination of whether to transfer an individual to foreign custody.  <u>See</u> Respondents' Opp. at 20-25.

Dated: October 16, 2006                    Respectfully submitted,

                                          PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

/s/ Edward H. White
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
EDWARD H. WHITE (D.C. Bar No. 468531)
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.  Room 6110
Washington, D.C. 20530
Tel: (202) 514-5108
Fax: (202) 318-4268
email: ned.white@usdoj.gov

Attorneys for Respondents