# EXHIBIT 1

IN THE UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAISOON MOHAMMED, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| v. ) | Civil Action No. 06-1455 (RCL) |
| ) | |
| FRANCIS J HARVEY, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## DECLARATION OF ROBERT M. PIRONE

I, Lieutenant Robert M. Pirone, hereby declare and say as follows:

1. I am a commissioned officer in the United States Coast Guard currently serving as an attorney at the Central Criminal Court of Iraq (CCCI) Liaison Office in Baghdad, Iraq. In this position, I assist in bringing evidence and witnesses to the CCCI at Investigative Hearings (IHs) for cases involving MNF-I Coalition Forces (MNF-I). I also bring complaints on behalf of MNF-I members at the CCCI for crimes against MNF-I soldiers or the citizens of MNF-I members. I make the following statements based upon my personal knowledge:

2. MNF-I is a coalition force consisting of approximately twenty-seven different nations that operates in accordance with the mandate of United Nations Security Council Resolutions UNSCR) 1546 (2004) and 1637 (2005). Resolution 1637 extended the mandate of MNF-I for another year on behalf of and at the request of the Iraqi government. The nation of Romania is a member of the MNF-I coalition forces.

3. On October 12, 2006, Mr. Mohammed Munaf Mohammed (Munaf), a Romanian-Iraqi-American citizen, appeared at the CCCI before a Trial Panel consisting

1

of three Iraqi judges -- Judge Abdul Ameer Abdul Kareem, Judge As'ad Dawood Salman, and Judge Dawood Abdul Kareem -- to face kidnapping charges under Article 421 of the Iraqi Penal Code, the substance of which were previously the subject of four CCCI Investigative Hearings (IHs). Munaf was represented at the IHs by Iraqi defense attorneys and at the trial by another Iraqi defense attorney, Mr. Badie Arrief Izzat (Badie). At all of the IHs and the trial, Munaf and his attorneys were given the opportunity to submit any evidence or bring any witnesses in Munaf's defense. The Trial Panel found Munaf, along with his five co-defendants, guilty of kidnapping, and sentenced them to death.

4. Munaf is the only defendant of the six defendants in this case who is or has been in MNF-I custody. The other five detainees are presently in the custody and have always been in the custody of the Iraqi Ministry of the Interior (MOI) or the Iraqi Ministry of Justice (MOJ). At the trial, a single defendant, who has never been in MNF-I custody, lifted his shirt and stated that the Iraqis had beaten him. This defendant made no accusations against MNF-I or anyone other than the Iraqis. Another of the defendants, who is also in Iraqi custody, attempted to show the judges an injury to his arm, but the judges stopped him. This defendant has never been in MNF-I custody and did not make any statements against MNF-I or anyone other than the Iraqis. No other defendant either displayed physical marks on their persons to the Court or made statements to the Court regarding abuse.

5. Munaf and the five co-defendants previously confessed at an IH, in front of an Iraqi IH Judge, to carrying out and being accomplices in the kidnapping of three Romanian citizens -- Marie Jeanne Ion, Sorin Dumitru Miscoci, and Ovidiu Ohanesian.

6. At the trial, the three-judge Trial Panel considered all the evidence presented at the Investigative Hearings. This evidence included the sworn confessions from the defendants that were given to Iraqi IH Judges of the CCCI. The judges of the Trial Panel also questioned all six defendants at the trial and took additional statements from them. At trial, five of the defendants, including Munaf, recanted their previous confessions, alleging that the Iraqis and/or the Romanians had forced them to confess. None of the defendants, including Munaf, alleged that MNF-I had forced them to confess. One defendant did not give a statement to the judges; he refused to answer the Iraqi judges' questions and acted as though he was mentally handicapped. The court requested and heard live testimony of an Iraqi employee from MOJ who stated that this particular defendant did not have any mental problems, was perfectly normal, and had never before acted the way he was then acting before the Court.

7. As part of my responsibilities in bringing complaints on behalf of MNF-I members to the CCCI for crimes against MNF-I soldiers or the citizens of MNF-I members, I appeared at the trial to make the formal complaint for the Romanian Government about the kidnapping of the three Romanian citizens by the defendants. I was sworn-in, and through an interpreter who was also sworn-in, stated that I had met with a member of the Romanian Embassy who authorized me to make this complaint on behalf of the Romanian Government. The Romanian Embassy had authorized me to do this in a signed and stamped letter that had been submitted to the Court weeks in advance of the trial. At no time did I ask or request of the Court that the defendants receive the death penalty or any other penalty. My role and statements were limited to answering the Court's questions about the facts of the case (as stated in the confessions of the

defendants), and making the formal complaint, as required by Iraqi law, on behalf of an MNF-I member nation.

8. No other member of MNF-I participated in the trial in any capacity. At no time did an American General, any other officer of the United States, or any General or officer of any MNF-I member nation appear at the trial. None of the other MNF-I personnel who attended the trial with me made any statements at the trial; rather, they merely observed the proceedings or acted as guards.

9. In addition to the statements given by myself, the Iraqi MOJ official, and the five defendants who made a statement, the three Judges of the Trial Panel also received arguments from the Iraqi Prosecutor and multiple defense attorneys. The Iraqi Prosecutor stated that there was enough evidence presented at the IHs and the trial to find the defendants guilty of kidnapping under Article 421 of the Iraqi Penal Code.

10. The Trial Panel then closed the courtroom and asked all persons to leave the courtroom. I and all other MNF-I personnel left the courtroom at that time. Once the courtroom was cleared, the three judges deliberated. During the entire deliberation time, I stood out in the court lobby and had a conversation with Munaf's Iraqi attorney, Badie. At no time during the trial was I present in the courtroom with members of the court when defense counsel were not also present.

11. Munaf's trial had been scheduled and delayed several times over many months based on objections from his attorney, Badie. During these months of delay, the evidence in the case file at CCCI was available for inspection by Munaf's attorney, Badie. After several delays, I was personally present on September 24, 2006 when Badie appeared before Judge Abdul Kareem and the judge asked Badie if he had any more

4

objections and whether he was ready to proceed. Badie stated he had no more objections, and was ready to proceed. Badie and Munaf both signed a notification that the trial would proceed on a specified date. There were no assertions made at this meeting by the judge that the case would be withdrawn, the charges would be dropped, or Munaf would be acquitted. I am not aware of any statements by any of the three judges in Munaf's case that the case would be withdrawn, the charges would be dropped, or Munaf would be acquitted.

12. Based on my prior first-hand participation in and observation of numerous CCCI Trial Panel proceedings, the proceedings of the October 12, 2006 Trial Panel that resulted in Munaf's conviction and sentencing were conducted in an orderly manner and followed established procedures of the CCCI.

13. Under the Iraq Law of Criminal Proceedings of 1971, Paragraph 224/D, a defendant who receives a death penalty gets an automatic appeal to the Iraqi Court of Cassation. The defendant has thirty days from the day after sentencing to submit materials to the Court of Cassation for his appeal.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on the 16th day of October, 2006.

_____, LT USCG
ROBERT M. PIRONE
Lieutenant, U.S. Coast Guard
CCCI Liaison Attorney

5